IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-01892-PAB-SKC

SHADOWHAWK A. TIGER,

      Plaintiff,

v.

BRETT POWELL, SHERIFF OF LOGAN COUNTY, in his individual and official
capacities,
KEN KIMSEY, UNDERSHERIFF OF LOGAN COUNTY, in his individual capacity, and
THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF LOGAN,
COLORADO,

      Defendants.

---

## ORDER

---

      This matter is before the Court on defendants' Motion to Dismiss [Docket No. 31].

Plaintiff responded, Docket No. 45, and defendants replied.  Docket No. 47.  The Court

has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND[1]

      Plaintiff, who is a Native American, was a sheriff's deputy/detention deputy with

the Logan County, Colorado Sheriff's Office ("LCSO") between August 8, 2017 and July

18, 2018.  Docket No. 24 at 9–10, ¶¶ 31–32.  Plaintiff, who had served in the Colorado

Army National Guard and worked in security and law enforcement, was well qualified for

his job with LCSO, performed his duties satisfactorily, met all employment standards,

---

[1] The following facts are taken from Plaintiff's First Amended Complaint and Jury
Demand [Docket No. 24] and are assumed to be true for purposes of this order.  *See
Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

and was never disciplined or told his performance was substandard.  *Id.* at 10, ¶¶ 33–34.

Within the first two weeks of his employment with LCSO, defendant Sheriff Brett Powell, who is white, called plaintiff his "BFI," which Powell explained meant "big f***ing Indian."  *Id.*, ¶¶ 35–36.  Plaintiff complained about these comments to his sergeant, who told plaintiff to ignore the comments and that, because Powell held the highest rank in LCSO, there was no one else plaintiff could complain to.  *Id.*, ¶¶ 37–39.[2]  Shortly after plaintiff complained to his sergeant, Powell yelled at plaintiff for complaining.  *Id.*, ¶¶ 43–45.  This discouraged plaintiff from further speaking out about the issue.  *Id.*, ¶ 46.  Powell called plaintiff "BFI" approximately 10 more times.  *Id.*, ¶ 47.  Plaintiff also heard Powell call an African-American deputy "BFN" for "big f***ing n***er."  *Id.* at 12, ¶ 48.

On July 9, 2018, plaintiff submitted his voluntary resignation, effective July 18, 2018.  *Id.* at 13, ¶¶ 56–58.  Plaintiff's resignation letter states that he intended to go to school or "pursue school or higher education opportunities," and he wrote on his separation form that he was leaving to return to school and due to family considerations.  *Id.*, ¶¶ 60–62.  After he resigned from LCSO, plaintiff attended junior college for a semester.  *Id.* at 13–14, ¶ 63.

In fall 2019, plaintiff applied for a position with the Colorado Department of Corrections ("CDOC") and was told that he would be hired upon completion of a

---

[2] Plaintiff also approached Byron Pelton, a Logan County Commissioner, at a county fair and asked Pelton "if the county commissioners or any other individual had authority over the sheriff, and what the rank structure was."  *Id.* at 12, ¶ 50.  Pelton told plaintiff that the county commissioners have no authority over the sheriff, yet Pelton "did not make any inquiry if there was any problem that [plaintiff] was experiencing with [Powell]."  *Id.*, ¶ 51.

background check.  *Id.* at 14, ¶¶ 64–69.  On November 18, 2019, plaintiff received

notification that he would not be hired because he was "deemed permanently ineligible"

for employment due to his "negative employment history with a prior law enforcement

entity."  *Id.* at 14–15, ¶¶ 71–72.  Because plaintiff left LCSO on good terms, he did not

think that LCSO was the source of this negative information.  *Id.* at 15, ¶ 74.  A county

human resources employee told him that there was nothing in his records that would

cause LCSO to give a negative review.  *Id.* at 15, ¶¶ 75–76.  Plaintiff's employment

record from LCSO shows no negative history, and Powell personally told plaintiff that

there was nothing about plaintiff's employment that would warrant a negative reference,

*id.*, ¶¶ 77–78, which Pelton confirmed.  *Id.*, ¶ 79.  The Colorado Army National Guard,

plaintiff's previous employer, also confirmed that there was nothing in those records that

would cause a negative reference.  *Id.* at 16, ¶ 80.

CDOC, however, refused to review its hiring decision.  *Id.*, ¶¶ 81–82.  Plaintiff

appealed to the State Personnel Board.  *Id.*, ¶¶ 83–84.  In the course of the appeal,

CDOC made required disclosures, including a document from LCSO authored by

defendant Undersheriff Ken Kimsey, on August 4, 2020.  *Id.*, ¶ 84.  The document

claimed that plaintiff had "poor or questionable" performance in a series of duties and

characteristics and a rating of "unacceptable," which is the lowest rating, in the category

of "[h]onesty and [i]ntegrity."  *Id.* at 17, ¶¶ 90–91.  The statement reflected that the

reason for the negative review was that plaintiff "said he was going to police academy,

never did.  Was going back to school."  *Id.*, ¶ 92.  Kimsey never worked with plaintiff or

communicated with him before this statement and did not investigate whether plaintiff

attended school after he left.  *Id.*, ¶¶ 94–95.  Plaintiff had no opportunity to contest these

characterizations.  *Id.* at 18, ¶¶ 96–97.  Plaintiff filed charges of discrimination with the Colorado Civil Rights Division ("CCRD") and Equal Employment Opportunity Commission ("EEOC") on December 16, 2020.  *Id.* at 16, ¶ 85.

CDOC never hired plaintiff.  *Id.*, ¶ 86.  Plaintiff alleges that, by LCSO deeming him permanently ineligible for employment, he was denied his Colorado constitutional right to continued employment as a public employee.  *Id.* at 16–17, ¶¶ 87–88.  He believes that Powell was motivated in disqualifying him from future employment by racial, national origin, or retaliatory animus and that Powell acted with deliberate indifference to the truth of the reference, regarding plaintiff's performance, and plaintiff's reasons for leaving.  *Id.* at 19, ¶¶ 104–05.  Plaintiff contends that defendant Logan County Board of County Commissioners (the "Board") was aware of the "false and wrongful actions" that Powell and Kimsey took against him and that Powell has "used improper racial words."  *Id.* at 20, ¶¶ 113–14.  The Board, however, has not "remediate[d]" the harm to plaintiff by "censoring [Powell and Kimsey], removing the ban on future employment for [plaintiff], instructing [human resources department] to correct the record with CDOC, or prohibiting further publication of the wrongful and false claims."  *Id.*, ¶ 115.  Plaintiff alleges that the Board is required to correct and prevent the distribution of false information.  *Id.*, ¶ 116.

Plaintiff alleges that he was the only Native American deputy in LCSO and that LCSO did not provide false negative information about any white employees to CDOC. *Id.* at 21, ¶¶ 122–23; *see also id.* at 5, ¶ 19.  Plaintiff believes that defendants' have violated his Fourteenth Amendment rights and have caused him economic loss, future harm in interfering with his ability to secure employment, reputational injury, emotional

distress. *Id.* at 21–22, ¶¶ 124–29.

Plaintiff brings eleven claims: (1) violation of Fourteenth Amendment liberty interest against Powell in his official capacity and the Board; (2) violation of Fourteenth Amendment liberty interest against Powell and Kimsey in their individual capacities; (3) violation of "Fourteenth Amendment, Equal Protection, and [42 U.S.C.] § 1981" against Powell in his official capacity and the Board; (4) violation of § 1981 for discriminatory treatment based on race or national origin against Powell and Kimsey; (5) violation of Title VII, 42 U.S.C. §§ 2000e, *et seq.*, against Powell in his official capacity and the Board; (6) violation of the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. §§ 24-34-401, et seq., for discriminatory employment action against Powell in his official capacity and the Board; (7) retaliation under Title VII against Powell in his official capacity and the Board; (8) retaliation under the CADA against Powell in his official capacity and the Board; (9) First Amendment retaliation against Powell in his official capacity and the Board; (10) tortious interference with an employment opportunity against Powell and Kimsey in their individual capacities; (11) outrageous conduct against Powell and Kimsey in their individual capacities. *Id.* at 23–42, ¶¶ 138–289. Defendants move to dismiss each of these claims. *See generally* Docket No. 31.[3]

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . .

---

[3] The parties group the claims into the following categories: (1) Fourteenth Amendment liberty interest claims (claims one and two); (2) Fourteenth Amendment equal protection claims (claims three and four); (3) Title VII and CADA claims (claims five, six, seven, and eight); (4) First Amendment retaliation (claim nine); (5) state tort claims (claims ten and eleven). *See id*; *see generally* Docket No. 45.

plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). However, a plaintiff still must provide "supporting factual averments" with his allegations. *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." (citation omitted)). Otherwise, the court need not accept conclusory allegations. *Moffet v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting

all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

## III. ANALYSIS

### A.  Fourteenth Amendment Liberty Interest – Claims One and Two

Plaintiff's first and second claims are that defendants violated his Fourteenth Amendment "liberty interest" by attacking plaintiff's "good name and reputation" and that they "published a document claiming that . . . [p]laintiff lacks honesty and integrity" and claiming "job performance deficiencies."  Docket No. 24 at 23–24, ¶¶ 141, 144.

The Tenth Circuit has held that "[a] public employee has a liberty interest in his good name and reputation as they relate to his continued employment."  *Earles v. Cleveland*, 825 F. App'x 544, 550 (10th Cir. 2020) (unpublished) (quoting *McDonald v. Wise*, 769 F.3d 1202, 1212 (10th Cir. 2014)).  To state a claim for "deprivation of one's liberty interest in good name and reputation," a plaintiff must plausibly allege: (1) "a state actor made a statement that impugned the plaintiff's good name, reputation, honor, or integrity; [(2)] the statement was false; [(3)] the statement was made during the course of termination and forecloses other employment opportunities; and [(4)] the statement was 'published' (disclosed to the public)."  *Id.* (quoting *McDonald*, 769 F.3d at 1212).[4]  Defendants contend that plaintiff fails to plausibly allege the third and fourth elements because he was not terminated from LCSO, but rather resigned voluntarily, and the negative employment reference was not "published."  Docket No. 31 at 6.

Plaintiff concedes that he was not terminated.  Docket No. 45 at 5.  However,

---

[4] Although plaintiff insists that the list of elements "is not a universal standard or agreed upon by all courts," *see* Docket No. 45 at 4, plaintiff provides no contrary authority.

plaintiff contends that the "proper analysis looks to an alteration of employment status, such as governmental deprivation of a right previously held, 'which, combined with the injury resulting from the defamation, justifies the invocation of procedural safeguards.'" *Id.* at 5–6 (quoting *Paul v. Davis*, 424 U.S. 693, 708–09 (1976)).  Plaintiff is incorrect. Although *Paul* reaffirmed that, "[w]here a person's good name, reputation, honor, or integrity is at stake [b]ecause of what the government is doing to him, notice and an opportunity to be heard are essential," *Paul*, 424 U.S. at 708 (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 436 (1971)), *Paul* is not, on its own, dispositive of plaintiff's claims because *Paul* did not involve a government employee's claimed liberty interest in his continued employment, unlike *Earles*.  Although in *Paul*, the Court determined that an individual is deprived of a protected liberty interest "where government action has operated to bestow a badge of disloyalty or infamy, with an attendant foreclosure from other employment opportunity," *id.* at 705 (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 898 (1961)), the Supreme Court has since clarified *Paul*.

As the Tenth Circuit noted in *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1154 (10th Cir. 2001), even though the Supreme Court has not explicitly overruled *Paul*, a set of facts that may have amounted to a deprivation-of-liberty-interest claim under *Paul* may now be foreclosed under subsequent Supreme Court caselaw, notably *Siegert v. Gilley*, 500 U.S. 226 (1991).  In *Siegert*, a clinical psychologist resigned under threat of termination from a federal government hospital and then sought employment in Army hospitals abroad.  *Id.* at 228.  In response to an Army request for information on Seigert's performance, Seigert's former employer stated that

he was inept, unethical, and untrustworthy.  *Id.*  Seigert's federal service was terminated, and he sued, alleging that his former federal employer prevented him from gaining new employment with the Army.  *Id.*  The Supreme Court held that Siegert did not state a claim for a violation of his liberty interests because he had not been terminated incident to the alleged defamation.  *Id.* at 234.  The Tenth Circuit in *Stidham* noted the "vociferous dissent" in *Siegert* and noted that "the five-member majority in *Siegert* made no reference to the constitutional deprivation of liberty caused by the foreclosure of employment opportunities, which the Court had previously approved in *Paul*, *Cafeteria Workers*, and [*Board of Regents v.*] *Roth*[, 408 U.S. 564 (1972)]."  *Stidham*, 265 F.3d at 1154.  Thus, the court in *Stidham* concluded that

> [l]ike Siegert, [a]ppellant was not terminated incident to an alleged defamation; [a]ppellant resigned, then sought government employment elsewhere.  Like Siegert, [a]ppellant was unable to obtain the type of government employment he sought, allegedly due to the defamatory statements.  On facts so close that they cannot be distinguished on a principled basis, the Supreme Court has foreclosed finding that this set of facts deprive one of a protected liberty interest.  Thus, we hold that [a]ppellant has not adequately alleged a claim for the violation of a constitutionally-protected liberty interest.

*Id.*  In light of the Tenth Circuit's direction in *Stidham* for how the Court is to apply *Siegert* to facts such as those in this case, where plaintiff was not terminated, the Court finds that plaintiff has failed to plausibly allege a deprivation-of-liberty-interest claim.  Whether plaintiff's claim would have survived before *Siegert* – for instance, under *Paul* – is of no matter.  *See id.* ("The Court in *Siegert* did not expressly overrule its prior precedents; however, despite its lack of explanation, the Court's holding in *Siegert* compels us to conclude that even though this action would have survived under *Paul* and its progeny, it has foreclosed relief under the Liberty Interest Clause of the

Constitution on the facts alleged in this case.").

Moreover, even if plaintiff could thread the needle between *Paul* and *Siegert*, defendants argue that plaintiff has failed to plausibly allege that defendants published the negative review because it was only sent between LCSO and CDOC, "both sub-units of the State of Colorado."  Docket No. 31 at 6 (citing *Alcorn v. La Barge*, 784 F. App'x 614, 618 (10th Cir. 2019) (unpublished)).  In *Alcorn*, a police chief, after terminating the plaintiff, submitted a "personnel change-in-status" form to the Wyoming Peace Officer Standards and Training Commission ("POST") recommending that POST decertify the plaintiff's law enforcement certification because of performance issues. 784 F. App'x at 616–17.  The court found that the plaintiff had not established that the communication between the police chief and POST constituted publication.  *Id.* at 619. The court explained that a "statement is 'published' if it is 'made public.'"  *Id.* (quoting *Bishop v. Wood*, 426 U.S. 341, 348 (1976)).  The court noted that the Tenth Circuit has "held that 'intra-government dissemination, by itself, falls short of the Supreme Court's notion of publication' because such statements are not 'made public.'"  *Id.* (quoting *Asbill v. Hous. Auth. of the Choctaw Nation of Okla.*, 726 F.2d 1499, 1503 (10th Cir. 1984)).  The court acknowledged that it has not "precisely defined the scope of intra-government disseminations," yet found intra-governmental publication, for instance within a state agency, between a sheriff's office and a county human resources department, or between a city's police department and city council, were "intra-governmental dissemination," rather than publication.  *See id.* (collecting cases).

The court then explained that "a similar rule should apply to communications between a municipal government and a state agency" because municipal corporations,

like the town in *Alcorn* are "created by states and are therefore akin to sub-units." *Id.* The court concluded that it saw "no meaningful distinction between applying the 'intra-governmental dissemination' standard to communications across units of government (such as between a city and county) and between a state and its sub-units (such as here)" because "important overlapping interests often exist between municipalities and state agencies." *Id.* The court specifically noted that "the ability to communicate the reasons for terminating law enforcement officers to the agency tasked with setting standards for and certifying those officers is essential to the maintenance and integrity of local police departments." *Id.* The same interests are present in this case. CDOC and LCSO require open communication with other law enforcement agencies in order to maintain the integrity of law enforcement and correctional officer hiring.[5]   Accordingly, because plaintiff has failed to plausibly plead the third and fourth elements of the deprivation-of-liberty-interest test, he has not plausibly alleged a Fourteenth Amendment liberty interest violation, and the Court will dismiss plaintiff's first and second claims.

## B.  Fourteenth Amendment Equal Protection – Claims Three and Four

Plaintiff's third claim asserts that defendants violated his rights to equal protection under the law by discriminating against him on the basis of his race or national origin. *See* Docket No. 24 at 29–32, ¶¶ 183–207. Plaintiff's fourth claim is that defendants violated § 1981 because they discriminated against him on the basis of his

---

[5] Although plaintiff is correct that *Alcorn* is an unpublished decision, the Court finds it persuasive given the similarity of the facts with this case. Moreover, the court in *Alcorn* cited numerous other unpublished cases, indicating that the weight of authority supports the Court's determination. *See id.* at 619–20.

race or national origin.  *Id.* at 32–34, ¶¶ 208–21.[6]

The Equal Protection Clause mandates that no state deny any person within its

jurisdiction the equal protection of the laws.  U.S. Const. amend. XIV.  An equal

protection violation occurs when a state actor treats someone differently than another

who is similarly situated.[7]  *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996); *City

of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *Barney v. Pulsipher*, 143

F.3d 1299, 1312 (10th Cir. 1998) ("The Equal Protection Clause requires the

government to treat similarly situated people alike").  "To make out a prima facie case of

discrimination, [plaintiff] must demonstrate (1) membership in a protected class, (2)

adverse employment action, and (3) disparate treatment among similarly situated

employees."  *Carney*, 534 F.3d at 1273 (quoting *Orr v. City of Albuquerque*, 417 F.3d

1144, 1149 (10th Cir. 2005)).  Thus, "to assert a viable equal protection claim, plaintiff[]

must first make a threshold showing that [he was] treated differently from others who

were similarly situated to [him]."  *Brown*, 662 F.3d at 1172–73 (citing *Barney*, 143 F.3d

at 1312).

Defendants do not argue that plaintiff is not a member of a protected class based

on his race.  *See* Docket No. 31 at 7–9.  Defendants also do not argue that the negative

---

[6] The Court addresses these claims in concert because, "[i]In racial
discrimination suits, the elements of a plaintiff's case are the same whether that case is
brought under §§ 1981 or 1983 or Title VII."  *Carney v. City & Cnty. of Denver*, 534 F.3d
1269, 1273 (10th Cir. 2008) (quoting *Baca v. Sklar*, 398 F.3d 1210, 1218 n.3 (10th Cir.
2005)).

[7] Different types of equal protection claims call for different forms of review; for
example, a claim that a state actor discriminated "on the basis of a suspect (e.g., race),
quasi-suspect (e.g., gender), or a non-suspect classification calls for strict,
intermediate, or rational basis scrutiny, respectively."  *Brown*, 662 F.3d at 1172 (citing *Price-
Cornelison v. Brooks*, 524 F.3d 1103, 1109–10 (10th Cir. 2008)).

reference did not constitute an adverse employment action.  *See id.*; *see also Chung v. El Paso Cnty./Colorado Springs Sch. Dist. #11*, 115 F. Supp. 3d 1242, 1258 (D. Colo. 2015) ("A negative reference may be considered an adverse employment action because it may harm future employment prospects and carry a significant risk of humiliation or damage to one's reputation.") (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239 (10th Cir. 2004) ("an action that significantly harms a plaintiff's future employment prospects may be considered an adverse action")), *aff'd sub nom. Chung v. El Paso Sch. Dist. #11*, 659 F. App'x 953 (10th Cir. 2016) (unpublished); *Hillig v. Rumsfeld*, 381 F.3d 1028, 1035 (10th Cir. 2004) ("Hillig has shown that her negative references seriously harm her ability to obtain employment at the DOJ in the future.  In other words, Hillig has shown that the negative references carried a 'significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects.'" (quoting *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996)).

Rather, defendants argue that plaintiff has failed to plausibly allege disparate treatment, i.e., that that he was treated differently than similarly situated employees because plaintiff has not identified any similarly situated white employees who were treated more favorably.  Docket No. 31 at 8.  Plaintiff alleges that his treatment was "dissimilar to the treatment given to white employees or former employees" and states that "[t]here is no record of any white employee or former white employee having been similarly disparaged on fabricated grounds."  Docket No. 24 at 33–34, ¶¶ 215–16; *see also id.* at 5, 31, ¶¶ 19, 193, 196 (alleging that defendants' failure to correct the information provided to CDOC and to disqualify plaintiff was dissimilar treatment than afforded to white employees).

Aside from these allegations, plaintiff concedes that he has not identified a similarly situated white or non-Native American employee who experienced different treatment, but contends that he does not need to identify such a comparator in his complaint before discovery.  Docket No. 45 at 8–9.  Plaintiff identifies no authority for this argument.

"An employee is similarly situated if he 'shares the same supervisor, is subject to the same standards governing performance evaluation and discipline, and has similar relevant employment circumstances, such as work history.'"  *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1252 (10th Cir. 2021) (quoting *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1318 (10th Cir. 2017)).  Even if plaintiff is correct that, at the motion to dismiss stage, he does not need to identify with specificity a comparator or similarly situated employee, he fails to allege that there were any similarly situated employees who were treated differently.  Plaintiff mentions white employees, but does not allege that they were similarly situated.  This is insufficient to plausibly state an equal protection claim.  *See, e.g.*, *Jemaneh v. Univ. of Wyo.*, 82 F. Supp. 3d 1281, 1300 (D. Colo. 2015) ("In short, [p]laintiff fails to sufficiently plead factual matter to support his conclusory allegations that he was similarly situated, that he was treated differently, or that [d]efendants intentionally discriminated against him.  A complaint will not suffice 'if it tenders naked assertions devoid of further factual enhancement.'" (quoting *Iqbal*, 556 U.S. at 678)), *aff'd*, 622 F. App'x 765 (10th Cir. 2015) (unpublished); *Lawrence v. Sch. Dist. No. 1*, No. 11-cv-02789-PAB-KMT, 2013 WL 791436, at *4 (D. Colo. Mar. 4, 2013) (granting motion to dismiss because although the plaintiff "satisfie[d] the first two elements of her prima facie case, she [did] not sufficiently identif[y] similarly situated

employees who were not terminated for comparable conduct"); *see also Hennigh v. City of Shawnee*, 155 F.3d 1249, 1257 (10th Cir. 1998) (an "*allegation* that a plaintiff was treated differently from those *similarly situated* is an essential element of an equal protection claim" (emphasis added)).  Courts in other districts have reached similar results.  *See, e.g.*, *Sosa v. N.Y.C. Dep't of Educ.*, 368 F. Supp. 3d 489, 514 (E.D.N.Y. 2019) ("[A]t the pleading stage, it is insufficient for a plaintiff to make naked assertions of disparate treatment without factual allegations indicating those employees treated differently were similarly situated.  The plaintiff must still identify at least one comparator to support a minimal inference of discrimination; otherwise the motion to dismiss stage would be too easy to bypass." (quotation and citation omitted)); *Odom v. Columbia Univ.*, 906 F. Supp. 188, 194–95 (S.D.N.Y. 1995) ("Odom does not refer to a single situation in which a student, let alone a similarly situated student, was treated differently by Columbia. . . .  Even on a motion to dismiss, a court cannot accept naked assertions in a complaint that does not set forth supporting allegations of facts." (quotation and citation omitted)).  Because plaintiff has failed to plausibly allege an equal protection claim, the Court will dismiss plaintiff's third and fourth claims.[8]

### C.  Title VII and CADA – Claims Five, Six, Seven, and Eight

Plaintiff's fifth claim asserts a violation of Title VII, *see* Docket No. 24 at 34–36, ¶¶ 222–34, and his sixth claim asserts a violation of CADA.  *See id.* at 36–37, ¶¶ 235–47.  Plaintiff's seventh and eighth claims are for retaliatory employment actions under

---

[8] Defendants argue that plaintiff also failed to plausibly allege an equal protection violation by defendant Kimsey.  *See* Docket No. 31 at 8–9.  Because the Court has dismissed plaintiff's equal protection claim against all defendants for the reasons discussed, the Court need not consider this argument.

Title VII and CADA, respectively.  *See id.* at 37–39, ¶¶ 248–67.[9]

### 1. Underlying Claims

As relevant here, Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment . . . because of such individual's race . . . or national origin."  *See* 42 U.S.C. § 2000e-2(a)(1).  Such claims can be demonstrated either by "direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic" or by "using the burden-shifting framework set forth in *McDonnell Douglas[ Corp. v. Green*, 411 U.S. 792 (1973)]."  *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 213 (2015).

Before the Court analyzes plaintiff's claims, the Court must determine what constituted the alleged unlawful discrimination.  Plaintiff alleges that he "suffered an adverse employment action when the [d]efendants issued (and continue to stand by) negative and false information about [p]laintiff to a future employer."  Docket No. 24 at 35–36, ¶¶ 226, 241.  As defendants note, the Court must confine its analysis of plaintiff's Title VII claims to "discrete employment actions that occurred within the 300-day period before [his] lone EEOC charge."  *See Salemi v. Colo. Pub. Emps. Ret. Ass'n*, 747 F. App'x 675, 689 (10th Cir. 2018).  Plaintiff alleges that he filed an EEOC

---

[9] Because "Colorado and federal law apply the same standards to discrimination claims," Title VII and CADA claims "rise or fall" together.  *See Johnson v. Weld Cnty.*, 594 F.3d 1202, 1219 n.11 (10th Cir. 2010); *see also Aluru v. Anesthesia Consultants*, 176 F. Supp. 3d 1116, 1123 (D. Colo. 2016) ("Likewise, claims alleged under the Colorado counterpart to Title VII, CADA, are also analyzed using the Title VII framework.").  Accordingly, the Court considers these claims jointly.  However, the Court notes that "the Tenth Circuit's interpretation of federal statutes does not bind this Court with regard to state law claims.  The Court is instead bound to apply substantive state law."  *Barrington v. United Airlines, Inc.*, 566 F. Supp. 3d 1102, 1111 (D. Colo. 2021).

charge on December 16, 2020 against defendants.  Docket No. 24 at 16, ¶ 85.  Thus, the Court may consider only employment actions that occurred between February 20, 2020 and December 16, 2020.  Plaintiff alleges that he "received a notification that he was not hired [by CDOC] and [was] 'deemed permanently ineligible for employment with [CDOC] per CDOC pre-employment standards" on November 18, 2019.  *Id*. at 14, ¶ 71.  This notification occurred before the 300-day period; however, plaintiff alleges that he did not learn that LCSO was responsible for the negative reference that led to the hiring decision until August 4, 2020.  *Id*. at 16, ¶ 84.

Although defendants mention the 300-day rule, defendants do not appear to argue that the alleged adverse employment action of the negative reference and hiring bar occurred outside of the 300-day window.  Defendants instead argue that Powell's comments cannot "substantiate [p]laintiff's discrimination and retaliation claims, as they occurred more than 300 days prior to the Charge of Discrimination."  *See* Docket No. 31 at 9.  Defendants overstate the law.  The Supreme Court has generally rejected the "continuing violation theory," under which "a plaintiff's belated EEOC charge is timely with respect to discrete incidents of discrimination or retaliation that occur more than 300 days before the charge on the ground that several discrete incidents are all part of a continual pattern of discrimination," *Salemi*, 747 F. App'x at 688, and "each discrete incident of [discriminatory or retaliatory] treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted."  *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003).  The Court has permitted, however, an employee to use prior discriminatory acts as "background evidence in support of a timely claim."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002);

S*underman v. Westar Energy, Inc.*, 307 F. App'x 224, 229 (10th Cir. 2009) (unpublished) ("the court should have considered the prior retaliation alleged by plaintiff as background evidence"); *Frank v. City of Fort Collins*, No. 18-cv-03204-RBJ, 2019 WL 3935176, at *10 n.2 (D. Colo. Aug. 20, 2019) ("Although plaintiff may not rely upon events that occurred before December 14, 2016 to state her claim, she is not barred from referring to these time-barred events as background evidence to support a timely claim.").

Defendants argue that plaintiff has failed to allege that there is direct evidence of a relevant workplace policy, practice, or decision.  Docket No. 31 at 10.  Plaintiff's response is that "[t]his case is the rare case where direct evidence – a supervisor using clearly racialized language – is in fact present."  Docket No. 45 at 9–10.  Although Powell allegedly used racist language, plaintiff does not allege that Powell's language is "[d]irect evidence" that "demonstrates on its face that the employment decision was reached for discriminatory reasons."  *Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 883 (10th Cir. 2018) (citation omitted).  Evidence is direct only if it "proves the existence of a fact in issue without inference or presumption."  *Id.* (citation omitted). The allegedly adverse employment action was the negative reference and plaintiff's bar on state employment.  Assuming the allegations in plaintiff's complaint are true, defendants' facially race-neutral actions were at most motivated by race or national origin animus, but do not, without more, "prove[] the existence" of defendants' animus motivations.  Thus, the Court considers plaintiff's claims under the *McDonnell Douglas* burden-shifting framework.  *See Young*, 575 U.S. at 213; *Fassbender*, 890 F.3d at 884.

A "prima facie case of racial discrimination" under *McDonnell Douglas* requires

plausible allegations that the plaintiff (1) is a member of a racial minority, (2) suffered an adverse employment action, and (3) that similarly situated employees were treated differently.  *See Trujillo v. Univ. of Colo. Health Sci. Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998) (citing *McDonnell Douglas*, 411 U.S. at 802).  Because plaintiff has failed to plausibly allege that there were other similarly situated employees, let alone that those employees were treated differently, as discussed previously, plaintiff has not plausibly alleged a Title VII claim.  Plaintiff's assertion that "[d]efendants do not offer any legitimate, non-discriminatory reason for the negative and false reference," Docket No. 45 at 10, is premature.  Only after a plaintiff has plausibly alleged a prima facie case does the burden shift to the defendant to articulate a legitimate, non-discriminatory reason or its employment action.  *See McDonnell Douglas*, 411 U.S. at 802.  Thus, the Court does not reach the issue of defendants' possible reasons for the negative reference because plaintiff has not satisfied his initial burden.  The Court, therefore, will dismiss plaintiff's fifth and sixth claims.

### 2. Retaliation Claims

Plaintiff's seventh and eighth claims are for retaliation under Title VII and CADA. *See* Docket No. 24 at 37–39, ¶¶ 248–67.  To state a prima facie case of retaliation, a plaintiff must allege that he (1) engaged in protected opposition to discrimination, (2) suffered an adverse action that a reasonable employee would have found material, and (3) "a causal connection exists between the protected activity and the materially adverse action."  *Barrington*, 566 F. Supp. 3d at 1112 (quoting *Nealis v. CoxCom, LLC*, 731 F. App'x 787, 790 (10th Cir. 2018) (unpublished)).  In other words, plaintiff "must establish that retaliation played a part in the [adverse] employment decision."  *Fye v.*

*Okla. Corp. Comm'n*, 516 F.3d 1217, 1224 (10th Cir. 2008).  "Opposition is protected under [Title VII] only if it is opposition to a practice made an unlawful employment practice by Title VII."  *Zokari v. Gates*, 561 F.3d 1076, 1081 (10th Cir. 2009).  Plaintiff alleges that he complained about Powell's racist comments to his sergeant, Docket No. 24 at 10, ¶ 37, and approached a county commissioner to ask if the commissioners or any others "had authority over the sheriff[] and what the rank structure was."  *Id.* at 12, ¶ 50.  Plaintiff also states that he "opposed" Powell's "practice by contacting his direct supervisor, his Sergeant, as well as Commissioner Byron Pelton."  *Id.* at 38, ¶ 253.[10]

### a. Exhaustion

A "plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue-letter."  *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194 (10th Cir. 2004) (quotation marks omitted).  Although defendants contend that exhaustion is a "jurisdictional prerequisite to filing at Title VII lawsuit," *see* Docket No. 31 at 10–11 (quoting *Faragalla v. Douglas Cnty. Sch. Dist. RE 1*, 411 F. App'x 140, 158 (10th Cir. 2011) (unpublished)), defendants are mistaken.  The Tenth Circuit "explicitly overturned its prior precedent which held that exhaustion is a jurisdictional issue for the purposes of Title VII" in

---

[10] Plaintiff's allegations about his report to Pelton are inconsistent.  Plaintiff's first allegation is that he approached Pelton at the Logan County fair and asked Pelton about the hierarchy in the LCSO.  *See id.* at 12, ¶ 50.  But this allegation does not state that he complained to Pelton about Powell's comments.  This allegation alone would be insufficient.  *See, e.g.*, *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202–03 (10th Cir. 2008) (holding that emails sent to the defendant regarding retaliation for giving negative evaluations and criticizing internal policies were not protected opposition because the plaintiff did not mention age or age discrimination).  Plaintiff's second allegation, which is that he opposed Powell by contacting Pelton, *see* Docket No. 24 at 38, ¶ 253, also does not indicate that he mentioned the discrimination to Pelton.

*Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166 (10th Cir. 2018).  *See Barrington*, 566 F.3d at 1111.  The court in *Lincoln* held that a "plaintiff's failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim."  900 F.3d at 1185.  Instead, a failure to exhaust a Title VII claim is considered an affirmative defense.  *See Payan v. United Parcel Serv.*, 905 F.3d 1162, 1169 (10th Cir. 2018).  Because defendants raise exhaustion, the Court construes it as an affirmative defense.  *See Schone v. Sodexo, Inc.*, 19-cv-02283-SKC, 2021 WL 915937, at *4 (D. Colo. Mar. 10, 2021) (construing exhaustion as affirmative defense even though it was not explicitly invoked as such) (citing *Lincoln*, 900 F.3d at 1185)).  The affirmative defense of failure to exhaust administrative remedies is appropriate on a motion to dismiss if "the grounds for the defense appear on the face of the complaint."  *Cirocco v. McMahon*, 768 Fed. App'x 854, 858 (10th Cir. 2019) (unpublished) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

CADA requires a plaintiff to fully exhaust his administrative remedies before filing a lawsuit.  *Clayton v. Dreamstyle Remodeling of Colo., LLC*, No. 20-cv-02096-KMT, 2021 WL 4078911, at *5 (D. Colo. Sept. 7, 2021) (citing Colo. Rev. Stat. § 24-34-306(14)); *Brooke v. Restaurant Servs., Inc.*, 906 P.2d 66, 72 (Colo. 1995); *City of Colo. Springs v. Conners*, 993 P.2d 1167, 1169 n.3 (Colo. 2000) (CADA's exhaustion requirement is a "condition precedent to bringing an action in district court"); *Zapata v. Colo. Christian Univ.*, No. 18-cv-02529-CMA-NYW, 2019 WL 1544179, at *7 (D. Colo. Mar. 15, 2019) (noting that CADA's exhaustion requirement applies equally to suits brought in federal court).  A plaintiff exhausts administrative remedies under CADA

upon receipt of a right-to-sue notice from the CCRD.  Colo. Rev. Stat. § 24-34-306(15) ("A notice of right to sue shall constitute final agency action and exhaustion of administrative remedies and proceedings pursuant to this part 3.").  Plaintiff alleges that he received a right to sue letter from CCRD and timely filed suit.  Docket No. 24 at 9, ¶ 28.[11]  Defendants do not argue that plaintiff failed to exhaust his CADA claim.

Defendants, however, argue that plaintiff did not exhaust his Title VII claim because he did not "check" the "appropriate category markers" on his EEOC charge. Docket No. 31 at 11–12.   Plaintiff did not provide his EEOC charge as an attachment to the complaint, but he does reference the charge in alleging that it was timely.  Docket No. 24 at 9, ¶ 28.  Defendants attach the charge as an exhibit to their motion, *see* Docket No. 31-2, and plaintiff refers to defendants' attachment in his response.  *See* Docket No. 45 at 11.  The Court, therefore, takes judicial notice of the charge.[12]

Plaintiff's EEOC charge checks discrimination based on race, religion, and national origin, but does not check retaliation.  *See* Docket No. 31-2 at 1.  A plaintiff's

---

[11] Plaintiff, however, cites Colo. Rev. Stat. § 8-13.5-104, which is the "[r]ight of nursing mothers to express breast milk in workplace – private location – discrimination prohibited."

[12] Generally, if a court considers matters outside the pleadings in deciding a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P 12(d).  However, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim," the Court may consider it on a motion to dismiss.  *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Because the charge is referenced in plaintiff's complaint and is critical to the Court's resolution of the plaintiff's claims, the Court may take judicial notice of it.  *See Villarreal v. Walmart, Inc.*, No. 19-cv-01722-PAB-STV, 2021 WL 1022701, at *5 (D. Colo. Mar. 17, 2021) (taking judicial notice of EEOC charge) (citing *Martinez v. City & Cnty. of Denver*, No. 08-cv-01503-PAB-MJW, 2010 WL 1380529, at *1 (D. Colo. Mar. 31, 2010); *GFF*, 130 F.3d at 1384).  Moreover, the Court may take judicial notice of the EEOC charges as administrative records.  *Id.* (citing cases).

claim in court "is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Smith v. Cheyenne Ret. Inv'rs L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018).  The purpose of the exhaustion requirement is "to give notice of an alleged violation to the charged party and to give the administrative agency an opportunity to conciliate the claim in furtherance of Title VII's goal of securing voluntary compliance." *Douglas v. Norton*, 167 F. App'x 698, 711 (10th Cir. 2006) (unpublished). Therefore, while the court must "'liberally construe' the plaintiff's allegations in the EEOC charge, 'the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim.'" *Smith*, 904 F.3d at 1164 (quoting *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007)).

A plaintiff, however, may seek relief for allegations that were not included in the EEOC charge, so long as the new claims are "reasonably related to the allegations of the EEOC charge." *See Villareal*, 2021 WL 1022701, at *6 (quoting *Mitchell v. City & Cnty. of Denver*, 112 F. App'x 662, 667 (10th Cir. 2004) (unpublished)).  "The ultimate question is whether the conduct alleged in the lawsuit would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made in the EEOC charge." *Smith*, 904 F.3d at 1164 (alteration omitted).  This is a "lenient" pleading standard.  *Azu v. Sam's Club, Inc.*, No. 18-cv-01956-RBJ, 2019 WL 5577948, at *5 (D. Colo. Oct. 29, 2019).  Further, unlike a complaint, an EEOC charge need not meet the plausible pleading standards of Rule 8 of the Federal Rules of Civil Procedure. *Jones v. Needham*, 856 F.3d 1284, 1291–92 (10th Cir. 2017).

Plaintiff's charge states that he believes that he was "unlawfully discriminated

against" because of his race, national origin, ancestry, and religion in violation of CADA and Title VII.  Docket No. 31-1 at 1–2.  Plaintiff's charge does not describe any retaliation or mention that he reported Powell's statements to his sergeant or Pelton. Because the charge does not mention retaliation or the protected conduct that plaintiff alleges led to the retaliatory action, plaintiff's claim of retaliation would not "prompt an investigation of the claim" of retaliation.  *See Jones*, 856 F.3d at 1290.  Plaintiff argues that, because he had good performance, which he mentioned in the charge, "it is [sic] flows as a logical conclusion that the only reason for the negative reference was because [plaintiff] had complained of mistreatment and discrimination."  Docket No. 45 at 11.  However, plaintiff does not explain why this is the case, or why the discrimination allegations in the charge would prompt an investigation of retaliation against plaintiff. Therefore, plaintiff has not exhausted his Title VII claim or overcome defendants' affirmative defense.

### b.  Causal Link

Assuming exhaustion of a Title VII claim, a plaintiff must still show that a "causal connection exists between the protected activity and the materially adverse action." *See Barrington*, 566 F. Supp. 3d at 1112.[13]  "To establish a causal connection, a plaintiff must present 'evidence of circumstances that justify an inference of retaliatory motive.'" *Duda v. Elder*, No. 18-cv-02890-RBJ, 2020 WL 6290383, at *8 (D. Colo. Oct. 27, 2020), *aff'd*, 7 F.4th 899 (10th Cir. 2021) (quoting *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th

---

[13] Defendants do not argue that plaintiff has failed to allege that he engaged in protected activity by reporting Powell's comments or that he suffered an adverse employment action.  *See generally* Docket No. 31.  The Court thus assumes that plaintiff plausibly alleged these elements.

Cir. 2014)).  "Temporal proximity – when the protected conduct is closely followed by the adverse action – is often the basis for inferring a causal connection."  *Id.* (citing *Ward*, 772 F.3d at 1203).

According to plaintiff's complaint, Powell first used the "BFI" slur within the first two weeks of plaintiff's employment, which began August 8, 2017.  Docket No. 24 at 9– 10, ¶¶ 32, 35.  Plaintiff complained to his sergeant within two weeks of hearing the slur. *Id.* at 38, ¶ 252.  There was, therefore, more than two years between the protected opposition to the discrimination – namely, plaintiff's complaint to his sergeant sometime in August or September of 2017 – and the materially adverse action, when plaintiff heard that he was permanently ineligible for employment with CDOC on November 18, 2019.  *Id.* at 14, ¶ 71.  See *Barrington*, 566 F. Supp. 3d at 1112.

"A retaliatory motive may be inferred when an adverse action closely follows protected activity."  *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).  As defendants note, the Tenth Circuit has found far shorter periods too long to establish the causal link element by temporal proximity alone.  *See, e.g.*, *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007) ("Four months is too large a time gap to establish a causal connection."); *Xia v. Salazar*, 503 F. App'x 577, 579 (10th Cir. 2012) (unpublished) (finding a ten-month gap too long and noting that "[a] six-week period between protected activity and adverse action may be sufficient, standing alone, to show causation, but a three-month period, standing alone, is insufficient" (quoting *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004)).  Longer periods may suffice in "unique circumstances," such as when a plaintiff is on leave for most of the time between the protected activity and the personnel action.  *See Wells v. Colo. Dep't*

*of Transp.*, 325 F.3d 1205, 1217 (10th Cir. 2003).  The court in *Wells* noted that "[t]he reason that a five-month gap generally does not in itself suffice to establish causation is that anger or resentment –the motivation for possible retaliation – is an emotion that tends to diminish with time."  *Id.*  "When retaliation for an act occurs well after the act, one wonders why the retaliator failed to act sooner."  *Id.*  In *Wells*, because the plaintiff was on leave, the court noted that, even if the supervisor "had a desire to retaliate for the November complaints, it did not make sense for him to do so until [p]laintiff returned to work."  *Id.*  Thus, the court held that the plaintiff had established sufficient temporal proximity to show causal connection.  *Id.*  No similar fact exists in this case.  Given the two-year gap between the protected activity and the negative reference, a question arises as to why Powell failed to act sooner.

In response, plaintiff argues that he has also alleged pretext because there was no legitimate reason for defendants to give the negative reference when plaintiff had no performance issues.  Docket No. 45 at 12–13.  Plaintiff says that pretext can establish a causal link.  *Id.*  Plaintiff is generally correct that, in cases like this one, where too much time has passed between the protected activity and the personnel action to establish a causal connection based on temporal proximity alone, "the plaintiff must rely on additional evidence beyond temporal proximity to establish causation."  *See Anderson*, 181 F.3d at 1179 (considering pretext to show causal connection).  However, the Tenth Circuit has cautioned that, although "pretext evidence can be considered when assessing whether the employee has established a prima facie case when that evidence indeed gives rise to an inference of actionable discriminatory intent," *Nealis*, 731 F. App'x at 791 n.2 (citing *Wells*, 325 F.3d at 1218), "plaintiffs must still produce

sufficient probative evidence to establish their prima facie case." *Id.* (citing *Barlow v. C.R. Eng. Inc.*, 703 F.3d 497, 505 (10th Cir. 2012) ("If the plaintiff does not establish a prima facie case, [her] entire case fails.")).  "We have also held that courts must not conflate evidence tending to cast doubt on the employer's stated reasons for an employment decision with the plaintiff's prima facie burden of establishing an inference of retaliation in the first instance." *Id.* (citing *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1144 (10th Cir. 2008) (holding that plaintiffs may not "gain the benefit of [an] inference [of retaliatory intent] without having to establish it," and a plaintiff hoping to prove her prima facie case by attacking the employer's reason for her termination must still show "a demonstrable nexus between aspersions cast on an employer's stated reasons and invidious intent")).  Courts applying these admonitions have held that a plaintiff must allege that the protected activity was a "but-for cause of the adverse employment action." *See Bekkem v. Wilkie*, 915 F.3d 1258, 1271 (10th Cir. 2019) (citing *Ward*, 772 F.3d at 1203; *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013)).  Although plaintiff has attacked defendants' reason for the negative reference, because Powell told him that there was nothing negative in plaintiff's performance that would warrant such a reference, *see* Docket No. 24 at 15, ¶ 78, plaintiff has not alleged a "demonstrable nexus" between the "aspersions" cast on defendants' motivations and "invidious intent."  *See Adamson*, 514 F.3d at 1144.  Rather, plaintiff simply alleges that "[t]he true reason for the negative reference is that it was issued in retaliation by [Powell] for [plaintiff] complaining about the discriminatory comments."  *See id.* at 38, ¶ 258.  This conclusory allegation, however, does not show defendants' invidious intent

or that plaintiff's complaint about the comments were a "but-for" cause of the negative reference more than two years after that complaint.  For instance, plaintiff has not alleged that Powell had a motivation for taking the adverse action, let alone that Powell's motivation was a "desire to retaliate for the protected activity," *see Wells*, 325 F.3d at 1218, given that plaintiff's allegation of protected activity is a single complaint to his sergeant more than two years before the reference, with no intervening retaliation. Nor has plaintiff plausibly alleged that defendants' proffered reason for the negative reference was so weak, implausible, inconsistent, or contradictory as to be unworthy of credence.  *See Proctor*, 502 F.3d at 1209.  The Court will therefore dismiss plaintiff's seventh and eighth claims.

### D.  First Amendment Retaliation – Claim Nine

Plaintiff's ninth claim is that he was retaliated against in violation of the First Amendment through the negative reference that barred him from future employment "when he spoke out about being called a 'BFI.'"  Docket No. 24 at 40, ¶¶ 268–73. Generally, to succeed on a First Amendment retaliation claim, plaintiff must show: (1) he "was engaged in constitutionally protected activity"; (2) defendants' "actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) defendants' "adverse action was substantially motivated as a response to [plaintiff's] exercise of constitutionally protected conduct."  *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).  Because plaintiff was a public employee, the Court's analysis of his First Amendment claim requires balancing his "free speech interests as a private citizen against the efficiency interests of the state, as an employer, using the five elements of the *Garcetti/Pickering* test."  *See Joritz v. Gray-*

*Little*, 822 F. App'x 731, 738 (10th Cir. 2020) (unpublished).   The *Garcetti/Pickering* test

comes from *Garcetti v. Ceballos*, 547 U.S. 410 (2006), and *Pickering v. Bd. of Educ.*,

391 U.S. 563 (1968).   *See also Kennedy v. Bremerton Sch. Dist.*, No. 21-418, 2022 WL

2295034, at *10 (U.S. June 27, 2022) (applying *Garcetti/Pickering* test to public school

teacher's First Amendment claims).   The five elements are

> 1. The protected speech was not made pursuant to an employee's official
> duties.
>
> 2. The protected speech addressed a matter of public concern.
>
> 3. The government's interests as an employer did not outweigh the
> employee's free-speech interests.
>
> 4. The protected speech was a motivating factor in the adverse
> employment action.
>
> 5. The defendant would not have made the same employment decision in
> the absence of the protected speech.

*Lincoln v. Maketa*, 880 F.3d 533, 538 (10th Cir. 2018).   The parties dispute whether

plaintiff has plausibly alleged the second element.   "Matters of public concern are those

of interest to the community, whether for social, political, or other reasons."   *Joritz*, 822

F. App'x at 738 (quoting *Morris v. City of Colo. Springs*, 666 F.3d 654, 661 (10th Cir.

2012)).   "Speech that pertains to a public agency's discharging its governmental

responsibilities ordinarily will be regarded as speech on a matter of public concern."   *Id.*

(quoting *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996)).   "But

'speech relating to internal personnel disputes and working conditions ordinarily will not

be viewed as addressing matters of public concern.'"   *Id.* (quoting *David*, 101 F.3d at

1355).   In distinguishing between these two types of speech, the Tenth Circuit directs

the Court to "consider the speaker's motivation: Was the speech calculated to redress

personal grievances or did it have some broader public purpose?"  *Id.* (quoting *Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1228 (10th Cir. 2014)).  The Court is to "examine 'the content, form, and context of a given statement, as revealed by the whole record.'"  *Id.* (quoting *Morris*, 666 F.3d at 661).

Plaintiff alleges that he "exercised his First Amendment rights when he spoke out about being called a 'BFI'" and that he was "subjected to an adverse employment action" in the negative reference.  Docket No. 24 at 40, ¶¶ 271–72.  Defendants argue that plaintiff's speech was not a matter of public concern because he: (1) did not mention it in his resignation letter, which he would have done if it were; (2) complain about Powell's racist comments about an African-American deputy; or (3) make any further complaints, even though Powell allegedly continued to call him BFI at least ten times.  Docket No. 31 at 13–14.

Plaintiff disagrees and argues that "some speech 'on internal employment conditions' could be 'regarded as pertaining to a matter of public concern if it addresses important constitutional rights which society at large has an interest in protecting.'"  Docket No. 45 at 13.  Plaintiff cites *Connick v. Myers*, 461 U.S. 138 (1983); however, the language that plaintiff attributes to *Connick* does not appear in that decision.  In *Connick*, an assistant district attorney, who was unhappy that she was going to be transferred to another division, circulated a document soliciting her co-workers' views on office transfer policy, office morale, the need for grievance procedures, the level of confidence in supervisors, and whether employees felt pressured to work on political campaigns.  *Id.* at 141.  The Court held that only the last question was a matter of public concern, *id.*, and cautioned that "[t]o presume that all matters which transpire within a

government office are of public concern would mean that virtually every remark – and certainly every criticism directed at a public official – would plant the seed of a constitutional case." *Id.* at 149. *Connick* does not help plaintiff.

Plaintiff also argues that "public concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." Docket No. 45 at 13–14 (quoting *City of San Diego v. Roe*, 543 U.S. 77, 84 (2004)). But plaintiff did not allege in his complaint that Powell's language would be the subject of legitimate news interest, general interest, or of value and concern to the public. Similarly, plaintiff argues that, when he made his complaint, he was only weeks into his employment with LCSO and was "not particularly or solely concerned with his own employment," but rather "understood [Powell] to be acting in a manner inconsistent with that of a professional public official and potentially demonstrating illegal race-based bias." *Id.* at 14. He further states that "his concerns were framed by his very outsider background and as a local citizen and former city council member in the community." *Id.* However, none of these allegations appears in the complaint, and plaintiff may not now attempt to essentially amend his complaint through his response to defendants' motion to dismiss. *See Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015) (citing *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995)).

*Joritz* helps to demonstrate that plaintiff's complaint about Powell's slurs was not a matter of public concern. In *Joritz*, as in this case, the plaintiff's claim was "predicated on her complaints of discrimination." 822 F. App'x at 738. The court held that the plaintiff's complaints "were not a matter of public concern because they focused entirely

on the conditions of her own employment and the impact the allegedly discriminatory student evaluations would have on her own prospects for tenure." *Id.* at 738–39.  In this case, the allegations show that plaintiff's complaint to his sergeant was focused entirely on Powell's comments to plaintiff, not on any broader issues.  "Speech of this nature is not a matter of public concern." *Id.* at 739 (citing *David*, 101 F.3d at 1356–57 (holding that allegations of sexual harassment focusing on the conditions of the plaintiff's own employment were not a matter of public concern); *Baca*, 398 F.3d at 1219 (holding that complaints of discrimination and retaliation against university for personal reasons did not involve matters of public concern, but reports of illegal financial dealings between university and state agency seeking to reveal official impropriety did involve matters of public concern); *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993) (concluding that allegations of sexual harassment were not matters of public concern absent any indication that plaintiff sought "to debate issues of sex discrimination" or otherwise reveal official misconduct) (internal quotation marks omitted)).  As in *Joritz*, plaintiff "did not levy a broad challenge to 'pervasive and systematic misconduct by a public agency or public officials'" or "attempt 'to correct allegedly unlawful practices or bring them to public attention.'" *Id.* (quoting *Saulpaugh*, 4 F.3d at 143 (internal quotation marks omitted)).  Although "the public may always be interested in how government officers are performing their duties," the First Amendment does not "transform everyday employment disputes into matters for constitutional litigation." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 399 (2011); *see also Joritz*, 822 F. App'x at 741 ("We have no doubt that discrimination and harassment in the workplace are issues of significant social interest, but that does not automatically translate an

employee's speech on those issues into matters of public concern for First Amendment purposes.").

Because plaintiff's complaint about Powell's slurs was not a matter of public concern, the Court need not proceed through the *Garcetti/Pickering* test.  *See Roe*, 543 U.S. at 84 ("Applying these principles to the instant case, there is no difficulty in concluding that Roe's expression does not qualify as a matter of public concern under any view of the public concern test.  He fails the threshold test and *Pickering* balancing does not come into play.").  Accordingly, the Court will dismiss plaintiff's ninth claim.

### E.  Tortious Interference and Outrageous Conduct – Claims Ten and Eleven

Plaintiff's tenth and eleventh claims are state-law tort claims for tortious interference and outrageous conduct.  Docket No. 24 at 40–42, ¶¶ 274–89.  Although the Court may exercise supplemental jurisdiction over state law claims if there is a jurisdictional basis for doing so, 28 U.S.C. § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  The Tenth Circuit has instructed that, "if federal claims are dismissed before trial, leaving only issues of state law," courts should "decline to exercise pendent jurisdiction . . . absent compelling reasons to the contrary."  *Brooks v. Gaenzle*, 614 F.3d 1213, 1229–30 (10th Cir. 2010) (brackets, internal citations, and internal quotation marks omitted).  This rule is consistent with "[n]otions of comity and federalism," which "demand that a state court try its own lawsuits."  *Id.* at 1230 (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)); *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) (holding that, "if the federal claims are dismissed before trial, even though not

insubstantial in a jurisdictional sense, the state claims should be dismissed as well" and

that, "[w]hen all federal claims have been dismissed, the court may, and usually should,

decline to exercise jurisdiction over any remaining state claims").  Accordingly, the Court

will dismiss plaintiff's state-law claims without prejudice.  *See* Colo. Rev. Stat. § 13-80-

111 (permitting claims properly commenced within the statute of limitations to be re-filed

if involuntarily dismissed because of lack of jurisdiction); *Artis v. District of Columbia*,

138 S. Ct. 594, 598 (2018) (holding that 28 U.S.C. § 1367(d) tolls the statute of

limitations for state law claims asserted under § 1367(a) during the pendency of the

federal litigation in which such claims are brought and for thirty days following

involuntary dismissal of those claims on jurisdictional grounds).

## IV.  CONCLUSION

For the foregoing reason, it is

**ORDERED** that defendants' Motion to Dismiss [Docket No. 31] is **GRANTED**.  It

is further

**ORDERED** that plaintiff's first, second, third, fourth, fifth, sixth, seventh, eighth,

and ninth claims are **DISMISSED with prejudice**.[14]  It is further

---

[14] In his response, plaintiff asks for leave to amend his complaint.  Docket No. 45 at 20.  Plaintiff's request is improper.  Pursuant to the Local Rules, "[a] motion shall not be included in a response or reply to the original motion.  A motion shall be filed as a separate document."  D.C.COLO.LCivR 7.1(d).  The Local Rules also require a party seeking to file an amended pleading to attach the proposed amended pleading. D.C.COLO.LCivR 15.1(b).  Plaintiff did not do so.  The Tenth Circuit recognizes "the importance of Fed. R. Civ. P. 7(b) and ha[s] held that normally a court need not grant leave to amend when a party fails to file a formal motion."  *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999); *see also Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1236 (10th Cir. 2020) ("[C]ases are not to be litigated piecemeal.  The court should not have to address repeated "improvements" to the complaint.  When a party faces a motion to dismiss and it believes that it can overcome objections with an amendment to the pleading, it should

**ORDERED** that plaintiff's tenth and eleventh claims are **DISMISSED without prejudice**.  It is further

**ORDERED** that this case is closed.


DATED September 13, 2022.


BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

seek leave to amend at that time."); *Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) ("A district court may deny leave to amend when a plaintiff fails to file a written motion and instead merely suggest[s] she should be allowed to amend if the court conclude[s] her pleadings [a]re infirm." (quotations omitted; alteration in original); *Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 706 (10th Cir. 2014) (affirming prejudicial dismissal and denial of request to amend made in response to motion to dismiss without formal motion); *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1238 n.4 (10th Cir. 2013) ("Where a plaintiff does not move for permission to amend the complaint, the district court commits no error by not granting such leave.").